UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Wiley Y. Daniel**

Civil Action No. 02-cv-00732-WYD-CBS

JOHN S. WILDER,

    Plaintiff,

v.

KEVIN P. TURNER,

    Defendant.

_____

**ORDER**
_____

THIS MATTER is before the Court on several post-trial motions. Specifically, on November 16, 2005, Defendant filed a Motion Pursuant to Fed. R. Civ. P. 50(b) for Judgment N.O.V. or, in the Alternative, for Relief from Judgment or a New Trial Pursuant to Fed. R. Civ. P. 59. A response to this motion was filed December 6, 2006, and a reply was filed January 17, 2006. Also filed were motions for attorneys fees by Plaintiff and Plaintiff's Motion for Court Order to Assess Costs of Court's Audio Expert. I address these motions below.

II.    BACKGROUND

Defendant Kevin P. Turner ["Turner"] conducted a traffic stop of Plaintiff John S. Wilder ["Wilder"] on November 30, 2001. Defendant Turner alleged that he observed indicators of alcohol use and arrested Wilder for suspicion of driving under the influence of alcohol and illegal possession of a firearm while intoxicated. Plaintiff Wilder sued Turner under 42 U.S.C. § 1983, claiming that he was arrested and

charged with driving under the influence of alcohol and use of a prohibited weapon without probable cause in violation of his rights under the Fourth Amendment to the United States.

A two (2) day trial to a jury was held October 26 and 27, 2005. At the close of trial on October 27, 2005, the Court denied Defendant's oral motion for a directed verdict. On October 28, 2005, the jury entered a verdict in favor of Plaintiff. The jury awarded $350,000 in noneconomic losses, $150,000 in economic losses, and $500,000 in punitive damages.

III.   ANALYSIS

   A.   Turner's Motion Pursuant to Fed.R.Civ.P. 50(b) for Judgment N.O.V. or, in the Alternative, for Relief from Judgment or a New Trial Pursuant to Fed.R.Civ.P. 59

Turner's motion first asserts that the Court should enter judgment in his favor under Rule 50(b), notwithstanding the verdict of the jury. In deciding a motion for judgment as a matter of law under Rule 50, "[a]ll reasonable inferences are drawn in favor of the nonmoving party and th[e] court does 'not make credibility determinations or weigh the evidence.'" *Loughridge v. Chiles Power Supply Co., Inc.*, 431 F.3d 1268, 1280 (10th Cir. 2005). "Judgment as a matter of law is appropriate 'only if the evidence points but one way and is susceptible to no reasonable inferences which may support the opposing party's position.'" *Id.* (quoting *Finley v. United States*, 82 F.3d 966, 968 (10th Cir. 1996)).

Turner argues as to the finding on liability under § 1983 that it is undisputed "that at least seven indicators of alcohol intoxication were present and observed by

Corporal Turner." Def.'s Mot. at 1.  Turner further asserts that even if he should have realized that other causes may have been present for the indicators, "his observation of them <u>in conjunction with the odor of alcohol and the admission of drinking</u> served to confirm a reasonable belief that Mr. Wilder was committing the offense of driving under the influence of alcohol or while his ability was impaired by alcohol." *Id.* at 5 (emphasis in original).  Accordingly, he asserts that "the evidence leads to no other conclusion than that Corporal Turner had probable cause to arrest and charge Mr. Wilder." *Id.*

     I reject Turner's argument.  He appears to incorrectly assume that because there was evidence that seven indicators of alcohol intoxication were present, this automatically means that there was probable cause to arrest.  As the jury was properly instructed, however, a finding of probable cause must be based on the totality of the circumstances.  *See People v. Mendez*, 948 P.2d 105, 108 (Colo. App. 1997), *aff'd*, 986 P.2d 275 (Colo. 1999), *cert. denied*, 529 U.S. 1070 (2000).  This determination is not tied to the presence of a certain number of indicators of alcohol intoxication, nor has Turner cited any case law that the indicators that were present give rise to probable cause as a matter of law.  Here, while Turner testified to the presence of certain indicators that he believed showed alcohol intoxication, there was also evidence that Turner decided to improperly arrest Wilder because he refused to take voluntary roadside sobriety tests.  There was also evidence from Wilder that many of the

indicators Turner observed were due to other causes[1], and Wilder testified that no reasonable person in Turner's position could have believed that he was intoxicated.

Importantly, a tape recording was presented at trial of the encounter between Turner and Wilder which allowed the jury to assess the credibility of many of the alleged indicators of alcohol intoxication.  For example, the taped encounter enabled the jury to assess the scope of Wilder's admissions to Turner, whether Wilder's speech was slow and deliberate, whether Wilder was argumentative, whether Wilder sounded intoxicated, and the general tone of the overall encounter between Turner and Wilder.  The jury may well have decided based upon such tape that they did not find Turner's account of the encounter to be credible.  *See United Intern. Holdings, Inc. v. Wharf (Holdings) Ltd.*, 210 F.3d 1207, 1227 (10th Cir. 2000) ("[t]he jury has the 'exclusive function of appraising credibility, determining the weight to be given to the testimony, drawing inferences from the facts established, resolving conflicts in the evidence, and reaching ultimate conclusions of fact'") (quotation omitted), *aff'd*, 532 U.S. 588 (2001).

In short, I find that the evidence did not point only one way in favor of Turner. While there was some evidence that could have led the jury to find probable cause, this evidence was not sufficient to mean that Turner had probable cause to arrest and charge Wilder as a matter or law.  Further, the evidence is susceptible to reasonable

---

[1] As Turner acknowledged in his motion at page 5, Wilder testified that his flushed face was due to the cold, his red and watery eyes were due to the smoke of his cigarette and the wind in his face from a cracked window, and his fumbling appearance was due to the lack of light in the car, not lack of coordination.  As to the lack of light, Wilder testified that he asked Turner for assistance through the use of his flashlight, and Turner refused.

inferences which support Plaintiff's position that there was not probable cause to arrest him. Accordingly, I deny Turner's motion for judgment notwithstanding the verdict on this issue.

Turner also argues in his reply that judgment should be entered in his favor notwithstanding the verdict based on the defense of qualified immunity. Turner asserts that "his 'reasonable but mistaken conclusion that probable cause was present' could not be controverted" based on his observation of the seven indicators of alcohol intoxication. Def.'s Mot. at 3. I reject Turner's argument for the same reasons discussed above in connection with the finding of probable cause. There was evidence from which the jury could infer that Turner arrested Wilder for a reason he knew was unlawful, *i.e.*, because Wilder refused to participate in voluntary roadside sobriety tests. If this evidence was accepted by the jury, the jury could have then reasonably inferred that Turner was not entitled to qualified immunity, *i.e.*, that Turner did not meet his burden of showing that a reasonable person in his position would not have known that his conduct violated Plaintiff's constitutional rights.[2]

Finally under Rule 50(b), Turner asserts that even if he lacked probable cause to arrest and charge Wilder, the Court should enter judgment in his favor as to the award

---

[2] I note that Defendant's initial motion to dismiss on the grounds of qualified immunity, filed before the Scheduling Conference in this case, was converted to a summary judgment motion and denied by Judge Kane. After discovery was completed, Defendant Turner did not file a motion for summary judgment within the deadline to do so. Very shortly before trial, Turner filed a motion for summary judgment on the basis of qualified immunity that was denied by me as untimely. *See* Order of October 14, 2005. The issue of qualified immunity was thus reserved to the jury, and the jury were instructed as to the standard they were required to find on this defense. *See Maestas v. Lujan*, 351 F.3d 1001, 1008-10 (10th Cir. 2003); *Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1251 (10th Cir. 2003); *Walker v. Elbert*, 75 F.3d 592, 598-99 (10th Cir. 1996). This standard is different than a ruling on qualified immunity in connection with a summary judgment motion.

of punitive damages. Turner argues that it was uncontroverted at trial that he acted in accordance with his training.[3] Further, Turner argues that "Plaintiff presented no evidence that Corporal Turner had acted maliciously or with any reckless disregard for the rights of Plaintiff, nor did Plaintiff present any evidence of ill-will." *Id.* at 3. The sum total of evidence supporting an award of punitive damages, according to Turner, was that he was "sarcastic", which does not satisfy the test for such damages.

Again, I reject Turner's argument. There was evidence at trial that could have supported a finding of punitive damages. For example, there was evidence, as referenced earlier, from which the jury could infer that Turner did not arrest Wilder for the reasons stated at trial but for an improper reason, *i.e.*, because Wilder refused to participate in a voluntary roadside sobriety test. There was further evidence wherein Turner attempted to persuade the jury that his pretrial affidavit indicating that arrested Wilder for refusing to take the sobriety test was false. The jury could have disbelieved Turner, and thought that he was lying under oath at trial about the true reasons for his arrest of Wilder. From this, the jury could have found that Turner's actions were recklessly or callously indifferent to Plaintiff's rights and/or that Turner's actions needed to be deterred and punished. *See Hardeman v. City of Albuquerque*, 377 F.3d 1106, 1120-21 (10th Cir. 2004). Accordingly, I deny the motion under Rule 50(b) to set aside the award of punitive damages.

---

[3] To the extent Plaintiff relief on inadequate training as a basis for punitive damages, Turner asserts that a negligent training claim was not alleged and Turner cannot be held responsible for any inadequacy in his training. Turner further asserts that an award of punitive damages against Turner is not appropriate to send a message to the Colorado State Patrol to correct inadequacies of training.

Alternatively, Turner argues that the Court should alter or amend the judgment and reduce the amount of the award or grant a new trial under Rule 59. I first address noneconomic damages. Turner argues that Wilder presented no evidence that his reputation was harmed. I disagree. Wilder himself testified to the impact on his reputation in the small town that he lives in. The fact that Wilder did not bring in other witnesses to verify that his reputation was harmed does not diminish Wilder's own testimony on this point. Accordingly, I find that there was evidence to support the award of noneconomic damages, and I deny Defendant's motion on this issue.

As to economic damages, however, I agree with Turner that there is no evidence that supports an award of such damages. Wilder admitted at trial that he sustained no economic damages. While Wilder asserts that he testified "he was threatened with the possibility of losing his job as county attorney as a result of his arrest", there was no evidence that he actually lost this job. Further, as to Wilder's argument that it would have been reasonable for the jury to infer that the damage to Wilder would include a significant loss of income for the rest of his life, this is not supported. There was no evidence that Wilder expected to or did actually incur a loss of income, and no other evidence of economic losses. Accordingly, Plaintiff's motion is granted on this issue. The Clerk of Court will be directed to amend the judgment to reflect that no economic damages are awarded.

As to punitive damages, Turner claims such damages are excessive and should be reduced. "'[I]t is well established that there are procedural and substantive constitutional limitations on [punitive damage] awards,' and that '[t]he Due Process

Clause of the Fourteenth Amendment prohibits the imposition of grossly excessive or arbitrary punishments on a tortfeasor.'" *Hardeman*, 377 F.3d at 1121 (quotation omitted). "In analyzing the constitutionality of punitive damages, the Supreme Court has instructed courts to look to 1) the degree of reprehensibility of the defendant's action; 2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damage award; and 3) the difference between the punitive damage award and the civil penalties authorized or imposed in comparable cases." *Id.* (citing *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 574-75 (1996)).

In the case at hand, I find after a consideration of the factors stated in *BMW* that the punitive damages award is not excessive. The ratio of compensatory damages to punitive damages was originally 1:1. While the economic damages have now been eliminated, the ratio of compensatory to punitive damages is still lower than 2:1. According to the Tenth Circuit, "'in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process.'" *Id.* (citing *State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408 (2003)). Here, however, the ratio of punitive to compensatory damages is well within the single digits. Thus, I do not find the ratio of punitive damages to compensatory damages to be unreasonable. Further, the jury could further have found Turner's actions to be reprehensible for the reasons stated above in connection with the discussion of punitive damages. Finally, I find that Turner has not shown any other grounds that make the award of punitive damages excessive.

Finally, Turner argues that a new trial is proper because evidence was presented at trial about prior arrests made by Turner. Turner asserts that while an objection was made and sustained, the jury heard the question asked and was left with the intended negative effect. Turner further asserts that the prejudice to Turner "was immediate and could not be corrected by the objections." Def.'s Mot. at 9. I reject this argument as a motion to deny the motion for new trial. "If error was found in the admission of evidence, [the court] will set aside a jury verdict only if the error prejudicially affects a substantial right of a party." *Sanjuan v. IBP, Inc.*, 160 F.3d 1291, 1296 (10th Cir. 1998). I first note that Turner did not seek a curative instruction as to this issue. Second, Turner has not advanced any argument as to how his substantial rights were affected by the admission of this evidence. Finally, since Turner acknowledges that this objection was sustained and Turner was not required to answer the question, I find that Turner's substantial rights were not impacted.

In conclusion, I find that Defendant's Motion Pursuant to Fed. R. Civ. P. 50(b) for Judgment N.O.V. or, in the Alternative, for Relief from Judgment or a New Trial Pursuant to Fed. R. Civ. P. 59 is granted in part and denied in part. The motion is granted as to the award of economic damages, and denied in all other respects.

B. <u>Plaintiff's Motion for Court Order to Assess Costs of Court's Audio Expert</u>

This motion seeks an order assessing costs of the audio expert in favor of Plaintiff in the amount of $1,426.00. Wilder asserts that the expert was made necessary by Turner's objection to Wilder's copy of the audio recording made by Turner, even though it was a jointly stipulated exhibit. Wilder further asserts that he

should recover the costs of this expert pursuant to 42 U.S.C. § 1988(c) since he prevailed at trial.

In response, Turner denies that he was responsible for the costs of the expert, asserting that the transcript of the original trial shows that the statement that the audio recording may have been doctored in some way was made by Wilder's counsel. Turner asks the Court to assess the costs of the audio expert equally by the parties, and asserts that he has already paid the expert his half of the fee. Thus, Turner requests that the Court assess the remaining one-half of the fee due the audio expert to Wilder. Wilder's reply disagrees with Turner's argument that it was Plaintiff's counsel who raised the issue of the doctored tape.

I find that Wilder's motion should be granted. While it is somewhat unclear who raised the issue of the doctored tapes, the parties stipulated to this expert being retained so that the issue of the audio tape's authenticity could be determined. 42 U.S.C. § 1988(c) allows the Court, in its discretion, to award expert fees as part of attorney's fees to the prevailing party. I exercise my discretion to assess the remaining fee due to the audio expert against Defendant Turner. In that regard, it appears based on Turner's response that he has already paid the expert $710.00. Accordingly, it appears that the remaining amount due the expert is $716.00 (from a total due of $1426.00), which cost is assessed against Turner.

### C. Plaintiff's Verified Motions for Attorney Fees and Expenses

On December 14, 2005, Wilder filed two Verified Motions for Attorney Fees and Expenses seeking fees as the prevailing party pursuant to 42 U.S.C. § 1988 (docket #

should recover the costs of this expert pursuant to 42 U.S.C. § 1988(c) since he prevailed at trial.

In response, Turner denies that he was responsible for the costs of the expert, asserting that the transcript of the original trial shows that the statement that the audio recording may have been doctored in some way was made by Wilder's counsel. Turner asks the Court to assess the costs of the audio expert equally by the parties, and asserts that he has already paid the expert his half of the fee. Thus, Turner requests that the Court assess the remaining one-half of the fee due the audio expert to Wilder. Wilder's reply disagrees with Turner's argument that it was Plaintiff's counsel who raised the issue of the doctored tape.

I find that Wilder's motion should be granted. While it is somewhat unclear who raised the issue of the doctored tapes, the parties stipulated to this expert being retained so that the issue of the audio tape's authenticity could be determined. 42 U.S.C. § 1988(c) allows the Court, in its discretion, to award expert fees as part of attorney's fees to the prevailing party. I exercise my discretion to assess the remaining fee due to the audio expert against Defendant Turner. In that regard, it appears based on Turner's response that he has already paid the expert $710.00. Accordingly, it appears that the remaining amount due the expert is $716.00 (from a total due of $1426.00), which cost is assessed against Turner.

### C. Plaintiff's Verified Motions for Attorney Fees and Expenses

On December 14, 2005, Wilder filed two Verified Motions for Attorney Fees and Expenses seeking fees as the prevailing party pursuant to 42 U.S.C. § 1988 (docket #

197 and 198). These appear to be the same motion filed twice, *i.e.*, they seek the same relief -- an award of attorney fees in the amount of $62,666.92. On January 17, 2006, Turner filed a Statement indicating that he agrees that the attorney fees requested by Wilder are reasonable.

I find that an award of fees is proper under 42 U.S.C. § 1988. That statute authorizes a court to award a reasonable fee to a prevailing party, other than the United States, in any action or proceeding to enforce a provision of Section 1983. I find that an award of attorney fees is appropriate in this case. *See Robbins v. Chronister*, ___ F.3d ___, 2006 WL 172357, *6 (10th Cir. Jan. 25, 2006) ("[a]n award of attorney fees under 42 U.S.C. § 1988 is a departure from general practice, presumably designed as an incentive to plaintiffs to engage in litigation to vindicate civil rights"). I further find that the attorney fees sought by Plaintiff are reasonable, and that Plaintiff should be awarded fees in the total amount of $62,666.92 allocated as Plaintiff indicates in his motion.[4]

IV.     CONCLUSION

Based upon the foregoing, it is

ORDERED that Defendant's Motion Pursuant to Fed.R.Civ.P. 50(b) for Judgment N.O.V. or, in the Alternative, for Relief from Judgment or a New Trial Pursuant to Fed.R.Civ.P. 59 is **GRANTED IN PART AND DENIED IN PART**. Specifically, it is

---

[4] To the extent Turner indicates in his Statement that he will seek a stay of execution of the attorney fee judgment, the Court will not address this without the filing of a motion on the issue.

ORDERED that Defendant's motion is **GRANTED** in connection with the award of economic damages, and the Clerk of Court is directed to prepare an Amended Judgment indicating that no economic damages are awarded. Defendant's motion is **DENIED** in all other respects. It is

FURTHER ORDERED that Plaintiff's Motion for Court Order to Assess Costs of Court's Audio Expert (filed November 16, 2005) is **GRANTED**. The costs of the audio expert that are still outstanding in the amount of $716.00 are assessed against Turner. It is

FURTHER ORDERED that Plaintiff's Verified Motions for Attorney Fees and Expenses (filed December 14, 2005) are **GRANTED**, and Plaintiff is awarded $62,666.92 in attorney fees and expenses.

Dated:  February 6, 2006

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
U. S. District Judge